**FEDERAL TRADE COMMISSION,**
**Petitioner-Appellee,**

v.

**Walter L. DILGER, Secretary, Beatrice Foods Co., Respondent-Appellant.**

**No. 12801.**

United States Court of Appeals
Seventh Circuit.

April 4, 1960.

Thomas A. Reynolds, Edward L. Foote, Winston, Strawn, Smith & Patterson, Chicago, Ill., for appellant.

Alan B. Hobbes, Asst. Gen. Counsel, E. K. Elkins, Atty., F. T. C., Daniel J. McCauley, Jr., Gen. Counsel, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge and PLATT, District Judge.

HASTINGS, Chief Judge.

This is an appeal from a district court order requiring respondent-appellant, Walter L. Dilger, as secretary of Beatrice Foods Co. (Beatrice), to comply

with a subpoena *duces tecum* issued by the Federal Trade Commission, petitioner-appellee (Commission), in the course of a proceeding against Beatrice.

In the main proceeding,[1] out of which this ancillary action arose, the Commission filed a complaint against Beatrice on October 16, 1956, alleging in substance that Beatrice, through a series of 44 acquisitions of other corporations, violated the "merger" provisions of Section 7 of the Clayton Act, 15 U.S.C.A. § 18 (38 Stat. 731, as amended, 64 Stat. 1125); and, by those and a further series of 87 acquisitions of non-corporate businesses, violated the "practices" provisions of Section 5(a) (1) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a) (1) (38 Stat. 717, as amended, 66 Stat. 632). During the course of hearings held since that time, Beatrice has furnished certain documentary evidence in response to three earlier subpoenas.

On December 30, 1958, the disputed subpoena was served upon Beatrice's secretary requiring him to produce:

"1. All schedules submitted to the Bureau of the Census on Form MC 20C by all plants, manufacturing establishments or units owned or controlled by your concern in conjunction with the 1954 census of manufacturers together with copies of all correspondence clarifying or amending said schedules or reports."

It has been understood by all parties that the subpoena demands the corporation's retained "copies" of the census forms or schedules prepared by Beatrice and now held in its corporate files.

The hearing examiner denied a motion by Beatrice to quash this fourth subpoena; and the Commission subsequently denied an interlocutory appeal therefrom, ruling that the corporation's retained copies of the census reports were not privileged, that the examiner could and should receive the records sought under appropriate orders to withhold from competitors the information therein set out, and that such information was material and relevant to the issues in the main proceedings. Subsequently, the hearing examiner ordered the subpoenaed documents produced under seal at a hearing set for May 5, 1959, the records to be received *in camera* and not to be made available for inspection by anyone other than parties to the proceeding. Compliance with the subpoena was refused and the hearing adjourned. The Commission thereupon instituted the instant action in the district court to enforce the subpoena.

The district court granted the Commission's enforcement petition and ordered Beatrice to produce its copies of the census reports for use in the Beatrice case and denied enforcement for two related cases against National Dairy Products Company and The Borden Company. This appeal is from the enforcement order in the Beatrice case. The Commission has not appealed from the denial in the other two related cases.

Appellant charges error in three adverse holdings by the district court; the contested issues arising therefrom may be summarized as follows:

I.  Whether the provisions of Sections 8 and 9 of the Census Act, 13 U.S.C.A. §§ 8, 9, create a "privilege" prohibiting the production and use in litigation by the Federal Trade Commission against Beatrice of copies of census reports or schedules prepared by Beatrice and submitted to the Bureau of the Census, such "copies" having been retained by Beatrice in its corporate files?

II.  Whether Section 8 of the Federal Trade Commission Act[2] re-

---

1.  In re Beatrice Foods Company, F.T.C. Docket No. 6653.

2.  15 U.S.C.A. § 48 (38 Stat. 722) provides: "The several departments and bureaus of the Government *when directed by the President* shall furnish the commission, upon its request, all records, papers, and information in their possession relating to any corporation subject to any of the provisions [of this Act] and shall detail from time to time such officials and employees to the commission as he may direct." (Emphasis added.)

quires the Commission first to attempt to obtain information from the Department of Commerce by a request to the President before issuing a subpoena or seeking its enforcement?

III. Whether the district court, in an ancillary subpoena enforcement proceeding, must hear evidence for the purpose of determining whether the record before the Commission in a pending administrative proceeding already contains evidence sufficient to enable it to decide the issues therein without the documents called for by the subpoena?

## I.

The subpoena in question required the production of copies of all schedules prepared by Beatrice and submitted to the Department of Commerce, Bureau of the Census, on Form MC 20C in conjunction with the 1954 census. These schedules were prepared on forms furnished by the Census Bureau, and each schedule (original and copy) had printed at the top of page one the following:

"Confidential—This report should be returned within 30 days of its receipt. This report is required by Act of Congress (13 U.S.C. § 131). Your report is confidential and only sworn Census employees will have access to it. *It cannot be used for purposes of taxation, investigation or regulation.*" (Emphasis added.)

The copy of each schedule to be retained by the company preparing it had printed across the bottom of the page in bold type:

"Keep This Copy for Your Files"

The 1954 manufacturer's census was taken pursuant to the Census Act, 13 U.S.C.A. § 131. Section 224 of the Act imposes criminal penalties for failure to respond completely and correctly to requests for information from the Department of Commerce in connection with such census. Section 214 imposes criminal penalties upon Government employees for wrongful disclosure of information coming into their possession by reason of their employment.

Section 8 of the Census Act authorizes the Secretary of the Department of Commerce, in his discretion, to make available for genealogical and other purposes certain returns and data from the population, agriculture and housing schedules (manufacturing schedules are not mentioned); and Section 8(c) provides, "In no case shall information furnished under authority of this section be used to the detriment of the persons to whom such information relates."

The so-called "privilege" or "prohibition" provisions of the Census Act are found in Section 9, which read in applicable part:

"§ 9. Information as confidential; exception

"(a) Neither the Secretary, nor any other officer or employee of the Department of Commerce or bureau or agency thereof, may, except as provided in section 8 of this title—

"(1) use the information furnished under the provisions of this title for any purpose other than the statistical purposes for which it is supplied; or

"(2) make any publication whereby the data furnished by any particular establishment or individual under this title can be identified; or

"(3) *permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.*" (Emphasis added.)

The Commission contends, in support of the holding below, that the express language in Section 9, supra, restrains only the actions of the Secretary of Commerce and officers and employees of his Department and that such restraint or privilege is limited solely to information in the custody of the Bureau of the Census. It argues that no privilege is extended for information or records (such as the retained copies in this instance) remaining in the possession of

742

persons who make reports to the Bureau. It goes further to urge that the Congress "studiously omitted" the privilege asserted by appellant. The Commission agrees that there is an expressed motive of encouraging candid reports to the Bureau of the Census, but says that this was sufficiently implemented by the provision limiting the use and release of those reports by the Bureau. It points to the lack of any statutory requirement that the reporting party shall keep and maintain copies of reports made by it. In short, the Commission seeks a strict and narrow interpretation of Section 9, limited to the precision of its expression and arrangement, that the Congress "intended to enact, no more and no less."

In seeking a reversal here, Beatrice urges that the Congress and the Executive Department intended that the schedules be used only for the purpose for which they were collected; that individuals and citizens supplying confidential information should not be harmed thereby; that the information furnished should not be used to the detriment of the parties submitting it; and that the information should remain confidential between the Bureau of the Census and the party submitting it. It argues that the basic objectives and purposes of the Census Act cannot be avoided by a limited or restrictive interpretation, but that it must be given that meaning which will carry out the expressed legislative policy. Beatrice strongly insists that to give effect to the Commission's position would result in frustration of the Congressional purposes and lead to a contradictory and absurd result.

Both parties have made reference to the legislative history of the Census Act. Without attempting to set out a summary of such material here, a review of this history makes it clear to us that the Congress sought to encourage the cooperation of individuals and businesses in furnishing requested information and to that end gave unreserved assurances that no harm would result from compliance;

that there need be no fear that disclosures would be made; and that for the protection of the rights and interests of persons furnishing information, severe criminal penalties would be invoked.

It is also quite clear that the Executive Department of the United States Government has expressed this same view. The Department of Justice, in an opinion dated September 29, 1930, from the Attorney General, William D. Mitchell, to the Secretary of Commerce,[3] stated that the Director of the Census should decline to furnish certain requested census information to the Women's Bureau of the Department of Labor. This opinion makes reference to the legislative history and Congressional purpose of the Census Act, as well as to certain statutory provisions. It significantly quotes from a proclamation of the President of the United States on November 22, 1929, 46 Stat. 3011, issued after the enactment of the Act of June 18, 1929 (Public Law No. 13, 71st Cong., 46 Stat. 21), wherein it was said to the people that:

"The sole purpose of the Census is to secure general statistical information regarding the population and resources of the country, and replies are required from individuals only to permit the compilation of such general statistics. No person can be harmed in any way by furnishing the information required. The Census has nothing to do with taxation, with military or jury service, with the compulsion of school attendance, with the regulation of immigration, or with the enforcement of any national, state, or local law or ordinance. There need be no fear that any disclosure will be made regarding any individual person or his affairs. For the due protection of the rights and interests of the persons furnishing information every employee of the Census Bureau is prohibited, under heavy penalty, from disclosing any information which may thus come to his knowledge."

3. 36 Ops.Atty.Gen. 362 (1930).

Defendant's Trial Exhibit 2 [4] is a letter from the Director of the Bureau of the Census sent out in 1955 to manufacturers. It enclosed copies of the "Annual Survey of Manufacturers Form MA–100" for reporting operations during 1955. It calls attention to the statutory requirement for filing the report and says: "The law also requires that your report be held absolutely confidential. It cannot be used for purposes of taxation, regulation, or investigation." It gives instruction in the method of preparation of the 1955 report and significantly directs the manufacturers in the precise manner of "using your 'File Copy' of the 1954 Census of Manufacturers report."

The Commission argues that the foregoing documents relate solely to information in the possession of the Census Bureau and to disclosure by officials and employees of that Bureau. It contends they have no application to retained copies in the custody of the informant. In effect, the Commission concedes that it could not enforce a subpoena against the Census Bureau and require the production of the original schedule on file there. *It seeks now to do indirectly that which it cannot do directly.* We cannot believe the Congress intended such a result.

This precise and important issue has not been passed upon by a court of appellate review. The only reported case called to our attention construing 13 U.S.C.A. §§ 8, 9 is United States v. Bethlehem Steel Corporation, D.C.S.D.N.Y. 1958, 21 F.R.D. 568. In that case the United States brought an action against two steel companies to enjoin them from proceeding with a proposed merger charged to be in violation of the Clayton Act. The United States moved for an order requiring the companies to produce copies of reports filed by them with the Department of Commerce, Bureau of the Census. The companies did *not* oppose production of the copies of the reports, but urged, *as a condition*, that

the United States be required to supply the companies with copies of similar reports filed by other major steel producers. The Census Bureau refused to make this information available to the Department of Justice or to any other person. The district court, in an opinion by Judge Weinfeld, held that the United States could not be required to supply defendants with reports filed by other major steel producers, since such reports were confidential under the statute.

While the facts and the issue in the Bethlehem Steel case, supra, are different from those in the case at bar, Judge Weinfeld gave careful consideration to the privilege statute and its legislative history. He concluded that it is the *information* furnished to the Census Bureau that is privileged, saying:

"One need not probe far to understand that when Congress imposed upon citizens the duty of disclosing information of a confidential and intimate nature, its purpose was to protect those who complied with the command of the statute. Apart from giving assurance to citizens that the integrity of the information would be preserved by the Government, another purpose was to encourage citizens to submit freely all data desired in recognition of its importance in the enactment of laws and other purposes in the national interests. Accordingly, Congress created a privileged status as to the information furnished to the Census Bureau and directed its confidential treatment so as to prevent misuse." 21 F.R.D. at page 570.

The Commission next contends that income tax decisions are squarely analogous and constitute authoritative precedent for compelling the production of copies of otherwise privileged information. We do not believe this asserted parallel runs true. Cases holding that copies of income tax returns can be produced involve an entirely different statute and Congressional purpose. Under

4. This letter is set out in full in appellant's brief, pages 28a–30a.

the provisions of 26 U.S.C.A. § 6103 there is Congressional authority whereby such tax returns may be made available. With limited exceptions found in Section 8, there is no such authority given in the Census Act. As Mr. Justice Frankfurter said in Federal Trade Commission v. Bunte Bros., 1941, 312 U.S. 349, 353, 61 S.Ct. 580, 582, 85 L.Ed. 881, "Translation of an implication drawn from the special aspects of one statute to a totally different statute is treacherous business."

It is said here that the data compiled in the manufacturer's census schedule is but a summary of information to be found in the company's other business records available to the Commission and that no harm can come to Beatrice as a result of producing its copy of the schedule. The Commission urges that it will thereby be saved considerable time and effort in attempting to make its own summary. However, such census schedules are cast in their proper perspective by the Director of the Bureau of the Census in the following statement:

> "The sections of Title 13 dealing with confidentiality of Census reports were enacted for the purpose of protecting companies against any harm which might result from their complying with a Census reporting requirement. This privileged relationship enables the Census Bureau to require response to inquiries which are necessarily formulated on a uniform basis for all companies in a particular activity regardless of whether or not their books of record directly yield the requested information. For this and other reasons estimates and approximations are necessarily acceptable in statistical reporting to an extent that would not be acceptable for financial or certain other purposes. Furthermore, it is essential to the economical and speedy consummation of statical programs that the rules gov-

erning reporting permit the companies to authorize subordinate officials to furnish information directly before formal clearance with comptrollers, auditors or company counsel, and that this information frequently be furnished before final figures have been developed in the company record system. In brief, the confidential relationship which is present in Census reporting is vital to its effectiveness." [5]

We are aware that such a letter cannot serve as authoritative precedent in this court, but it does clearly describe the conditions under which such schedules are prepared.

In light of the foregoing review, we conclude that the Commission cannot compel the production of a copy of a census schedule in possession of the company that furnished the original thereof to the Census Bureau through enforcement of a subpoena *duces tecum*. To hold to the contrary, we believe, would run counter to the Congressional purpose of the Census Act and the assurances given by the Government to the public. These assurances of confidentiality and protection constitute a pledge of good faith on the part of the Congress, the President and the Department of Commerce. We do not think that another arm of the Government (the Federal Trade Commission) can be heard to say that such representations may be avoided in this indirect manner. The United States has given its word and should be permitted to keep it.

Courts should construe a statute agreeable with its dominant purpose so as to carry out the legislative policy. S. E. C. v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 350–351, 64 S.Ct. 120, 88 L.Ed. 88. We do not agree that we are here attempting to "supply what Congress has studiously omitted," as was the case in F. T. C. v. Simplicity Pattern Co., 1959, 360 U.S. 55, 67, 79 S.Ct. 1005, 1012, 3 L.Ed.2d 1079.

---

5. Taken from a letter dated April 29, 1959, shown in full on pages 30a–32a of appellant's brief, in which a company was re-

fused copies of its own census schedules in order to comply with a Federal Trade Commission subpoena.

We hold that the district court erred in ordering enforcement of the subpoena in question.

## II.

■ We agree with the Commission that it was not required to ask the President to direct the Bureau of the Census to furnish it the requested information before issuing a subpoena or seeking its enforcement. We read no such mandate in Section 8 of the Federal Trade Commission Act, 15 U.S.C.A. § 48. Cf. Fleming v. Montgomery Ward & Co., 7 Cir., 1940, 114 F.2d 384, 392, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L. Ed. 446. No cases have been cited in support of appellant's contention. Neither do we believe that the doctrine of exhaustion of administrative or extra-judicial remedies has any application to the problem facing us in the case at bar.

We hold that the district court did not err in rejecting this contention of appellant.

## III.

■ We further hold with the Commission that the district court did not err in refusing to hear evidence offered by appellant for the purpose of showing that the Commission had in its record evidence sufficient to enable it to decide the issues before it without the documents called for by the subpoena. The district court properly observed that the state of the record before the Commission was not in issue before it. The question of relevancy in relation to the admissibility of the document in question remains an open question to be determined in a proper forum. Civil Aeronautics Board v. Hermann, 1957, 353 U. S. 322, 323–324, 77 S.Ct. 804, 1 L.Ed.2d 852.

Having held, under the issue considered in part I herein, that the district court erred in ordering enforcement of the subpoena in question, the order of the district court appealed from is reversed; and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.