**UNITED STATES of America,**
**Petitioner,**

v.

**ASSOCIATED MERCHANDISING COR-**
**PORATION, Aimcee Wholesale Corpo-**
**ration, and Federated Department**
**Stores, Inc., Respondents.**

No. 66 Civ. 1156.

United States District Court
S. D. New York.

Nov. 7, 1966.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for United States, Lawrence W. Schilling, Asst. U. S. Atty., Harold D. Rhynedance, Jr., Federal Trade Commission, of counsel.

Weil, Gotshal & Manges, New York City, for respondents Associated Merchandising Corp. and Aimcee Wholesale Corp., Ira M. Millstein, Irving Scher, New York City, of counsel.

Arnold & Porter, Washington, D. C., for respondent Federated Dept. Stores, Inc., Norman Diamond, Murray H. Bring, Washington, D. C., of counsel.

## OPINION

McLEAN, District Judge.

This is a proceeding under Section 9 of the Federal Trade Commission Act (15 U.S.C. § 49) for an order directing respondents to comply with an order dated August 12, 1965 of a Hearing Examiner of the Federal Trade Commission which directed respondents to produce certain documents. On July 13, 1966 I denied respondents' motion to dismiss petitioner's application and by order dated that day I set the application down for a hearing on September 9. United States v. Associated Merchandising Corp., 256 F.Supp. 318 (S.D.N.Y.1966). After an adjournment, the hearing was held on September 19 at which time petitioner introduced certain documentary evidence and respondents Associated Merchandising Corporation (AMC) and Aimcee Wholesale Corporation (AWC) called two witnesses and introduced various exhibits. Respondent Federated Department Stores, Inc. (Federated) offered no additional evidence. It rested on the affidavit which it had originally submitted in opposition to the application.

There is no dispute as to the following facts.

On November 24, 1964, the Commission issued a complaint charging these respondents and others with knowingly inducing or receiving price discriminations in violation of Section 2(f) of the Robinson-Patman Act (15 U.S.C. § 13 (f)). The allegations of this complaint may be briefly summarized as follows:

AMC is a New York corporation organized in 1939, the stock of which is owned by various department or specialty stores, including Federated. AWC is a

New York corporation organized in 1946. It is a wholly owned subsidiary of AMC.

AMC purchases goods of various suppliers (referred to as "resources") "through respondent AWC for the account of each AMC shareholder store." AMC and AMC shareholder stores "through the agency and instrumentality of respondent AWC" have knowingly induced resources to grant preferential prices to AMC shareholder stores by selling their goods to these stores at lower prices or with higher allowances or discounts than those which the resources grant to customers who are not AMC shareholders, but who are in competition with AMC shareholder stores. No time period for these alleged activities is specified in the complaint.

Respondents have filed an answer in the administrative proceeding denying these charges.

During pre-trial proceedings before the Hearing Examiner, counsel for the Commission supporting the complaint ("complaint counsel") filed with the Hearing Examiner a "submission" in which they outlined the proof that they proposed to offer at the trial. In this document complaint counsel stated that they would offer detailed evidence with respect to transactions with ten specified resources. They stated that "precise information showing price discrimination by suppliers will be limited to" these ten. Complaint counsel furnished the Hearing Examiner with tabulations of sales made by these ten suppliers to certain AMC stores and to certain non-AMC stores. Each of these tabulations is concerned with transactions in 1963 or 1964.

In their submission complaint counsel further stated that "for the purpose of demonstrating that respondent AWC is not a legitimate wholesaler but is simply an instrumentality of respondent AMC and respondent AMC shareholder stores to obtain preferential prices from resources," complaint counsel would intro-
duce "information from 200 of respondents' largest suppliers." The submission stated that "reference to the 200 resources will be made during this trial only from the standpoint of showing how much respondents purchase from each of these suppliers, the precise amount of goods purchased that are shipped to any warehouse of AWC or AMC, the amount of such goods purchased by the individual AMC shareholder stores as well as the amount of such goods sold by AWC to customers other than the AMC shareholder stores." [1]

Thereafter complaint counsel moved before the Hearing Examiner for an order directing respondents to produce a number of documents. The motion was made pursuant to Section 3.11 of the Commission's Rules of Practice for Adjudicative Proceedings (16 C.F.R. § 3.11). That Rule, as far as pertinent, reads:

"Upon motion of any party showing good cause therefor and upon such notice as the hearing examiner may provide, the hearing examiner may order any party to produce and permit the inspection and copying of non-privileged documents, papers, books, or other physical exhibits which constitute or contain evidence relevant to the subject matter involved and which are in the possession, custody, or control of such party."

Complaint counsel moved at the same time in the alternative for an order granting them access to respondents' files for the purpose of examining and copying these documents. This application was based on Rule 3.17(c) of the Rules of Practice for Adjudicative Proceedings (16 C.F.R. § 3.17(c)) which, as far as pertinent, provides:

"Application for issuance of an order requiring any corporation being proceeded against to grant access to files for the purpose of examination and the right to copy documentary evi-

1. A list of these resources was attached to the submission. There are 286 names on the list, not 200. The parties agree that the figure 200 in the text of the submission was a typographical error.

dence shall be made in writing to the hearing examiner, and shall specify as exactly as possible the files to which access is requested, showing the general relevancy of the files and the reasonableness of the scope of the order."

Respondents opposed both motions before the Examiner.

By order dated August 12, 1965, the Examiner granted complaint counsel's first motion in its entirety. He directed respondents to produce all the documents demanded. His order neither granted nor denied the alternative motion for access to the documents. Apparently he treated this motion as moot, in view of his decision granting the first motion.

Respondents applied to the Commission for leave to appeal from the Hearing Examiner's order. The Commission, by order dated September 23, 1965, denied respondents' application. In so doing, it wrote an opinion in which it took occasion to discuss the meaning of "good cause" and expressed the view that complaint counsel's showing before the Hearing Examiner "appears clearly to meet the indicated requirements of § 3.11."

Respondents declined to comply with the Hearing Examiner's order. The present enforcement proceeding followed in due course.

Some of the documents which respondents have been directed to produce relate to the ten suppliers specified in complaint counsel's pre-trial submission. Some relate to 276 other suppliers.[2] Some relate to neither group of resources, but call for lists of officers and salesmen, directors' minutes, manuals, reports, and the like.

A few of the documents are precisely identified as, for example, a particular manual, or records reflecting sales for specified years. Most of the items, however, are phrased in general terms and several are of the typical dragnet variety calling for "all correspondence, memoranda or other written material" relating to various subjects. In many instances the time periods involved are extensive. Some items require production of documents "for the period 1945 to date." Others specify no period at all so that theoretically, at least, AMC and AWC have been required to produce documents coming into existence at any time since the date of their incorporation in 1939 and 1946 respectively.

At the hearing in this court, AMC and AWC introduced evidence which demonstrates that at four different periods prior to the filing of the Commission's complaint in November 1964, representatives of the Commission requested information and documents from AMC and AWC with respect to their purchases from suppliers and their sales of merchandise to AMC stores and non-AMC stores. Such requests were made in 1951–1954, 1960–1961, 1962 and 1963. Many documents were requested. AMC and AWC complied with all these requests, apparently with very considerable expense to themselves. It is unnecessary to recite these requests in detail here. Suffice to say that none of them related to the ten suppliers upon whom complaint counsel have now decided to focus their case.

At the hearing a vice president of AMC testified as to the difficulties which AMC and AWC will encounter in complying with certain portions of the Hearing Examiner's order. Items 2–c and d require information as to the gross dollar value of sales by AMC or AWC to each AMC shareholder store and each non-AMC shareholder store of the merchandise which AMC or AWC had purchased from each of 286 suppliers. Item 2–b requires the total value of shipments made by each of these 286 suppliers to AMC or AWC warehouses as distinct

---

**2.** Attached to the motion to produce is a list of 286 suppliers. Ten of these are the ten specified in complaint counsel's pre-trial submission, as the suppliers with respect to whom complaint counsel propose to offer detailed evidence at the trial. The remaining 276 are the suppliers referred to in complaint counsel's pre-trial submission as those with respect to whom complaint counsel propose to make only limited reference at the trial.

from so-called "drop shipments" made by the supplier directly to the retail store upon AWC's order. All this information is required for each of four years 1960, 1961, 1963, and 1964.

The witness explained that inasmuch as AMC and AWC do not keep their accounting records of sales to their customers or their records of goods in their warehouses in such a way as to reflect the name of the supplier from whom they originally purchased the goods, it would be necessary, in order to comply with this item, to examine some 2 million separate invoices. This examination must be made by experienced personnel who are competent to tell from the description of the goods on the invoice the name of the supplier who originally furnished it to AMC or AWC. The witness estimated that to comply with Item 2 would require "ten man years" of labor.

Item 5 calls for "all AWC invoices showing sales of merchandise through" AWC for 1963 and 1964 "together with all supporting papers, memoranda, telephone reports, documents and correspondence relating to such sales from the following suppliers or resources." The "following suppliers" are the ten suppliers previously mentioned. This provision is not very lucid but the parties seem to agree that it is intended to mean that AWC shall produce all the invoices issued by it in 1963 and 1964 to its customers with respect to goods which it had previously purchased from each of the ten specified suppliers, and that it shall produce in addition all correspondence and other documents relating to each such transaction.

The witness testified that since AWC's sales records are not indexed by suppliers, it would be necessary to examine all AWC invoices of its sales for 1963 and 1964 and all its correspondence files for those years, a task which he estimated would require 12 man months.

Item 6 calls for:

"Originals, copies or photostats of all correspondence, memoranda or oth-

er written material, excluding invoices, between Associated Merchandising Corporation, Aimcee Wholesale Corporation and the suppliers or resources listed in item 5 dealing with prices, terms of trade, sales, methods of shipment, billing of invoices, profit, rate of return and cost from the period commencing with negotiations with each such resource by respondents AMC and AWC to date." [3]

The witness testified that to comply, it would be necessary to examine all the files of every employee of AMC or AWC who might have been involved in any transaction with those suppliers.

Item 7 calls for:

"Originals, copies or photostats of all books and records as will disclose the names and addresses of chairmen and members of all committees, including buyer's committees, steering committees, Store Principal's Committees, having any connection, dealings, contact with or discussions about the suppliers or resources listed in item 5."

The witness testified that AMC and AWC have scores of committees and that the minutes of these committees are not indexed by supplier or by each discussion which takes place at each meeting. Consequently, in order to comply with this requirement and ascertain which committees had "contact with or discussions about" the ten suppliers, it would be necessary to examine all the files of all the committees. He testified that to comply would "completely interrupt the conduct of our business."

Petitioners offered no evidence to contravene the foregoing testimony in any respect.

In requiring the production of these documents, the Hearing Examiner necessarily held that complaint counsel had shown "good cause" for their production, within the meaning of Rule 3.11 and that they had demonstrated that the documents "constitute or contain" relevant evidence. It is hard to see how he could

---

3. The "resources listed in item 5" are the ten previously mentioned.

have arrived at this conclusion, as far as some of the items are concerned.

With respect to "good cause," the Commission has been designedly vague. Indeed, in its opinion in this very case denying respondents' leave to appeal, it said:

"Good cause is essentially a factual question and a determination as to whether adequate reasons for the desired production are given will depend on the circumstances in each case. The Commission has observed in other connections that it is 'neither necessary nor desirable to frame a firm rule of general application defining with particularity the elements of a showing of good cause.' "

And in In the Matter of L. G. Balfour Company, Docket No. 8435, May 10, 1963, the Commission said:

"It is obviously not possible to show 'good cause' without a fairly well drawn designation of the material sought. But, the question of the sufficiency of designation, like that of good cause should not be solved by resort to rules, whether strict or liberal, for in order for justice to be done, each problem which arises should be approached without the handicap of an arbitrary formula."

In its opinion in the present case, however, the Commission did say:

"Generally, under Section 3.11, as to the production of documents sought prior to the hearings, good cause means that the moving party must show that the documents will aid him in the preparation of his case."

And in In the Matter of Topps Chewing Gum, Inc., Docket No. 8463, July 2, 1963, an opinion dealing with depositions, the Commission said:

"In general, a determination of good cause for the taking of depositions requires a showing of the relevance and usefulness for defensive purposes of the information sought and of the need for eliciting it by deposition rather than by testimony at the hearings, together with appropriate consideration of claims of confidentiality, basic fairness to the parties, and the paramount need for avoiding delay."

Under such a broad definition, "good cause" and relevance, both of which are mentioned in Rule 3.11, come down to pretty much the same thing. If this is so, and if by the Commission's standards relevance is the essential criterion, it would seem that some meaning must be given to the Rule's requirement that the documents to be produced shall "constitute or contain" evidence relevant to the subject matter. It is obvious as to some of the dragnet items that neither petitioner nor respondents themselves know at this moment what the documents contain. It is impossible to say now that they contain relevant evidence. Nevertheless, the Hearing Examiner has directed them to be produced so that complaint counsel may find out whether they contain relevant evidence or not.

■ As to these items, the order is investigative in nature. The Commission has another set of rules for investigations, one of which, Rule 1.34 (16 C.F.R. § 1.34), provides for the issuance of a subpoena duces tecum for the production of documents "relating to any matter under investigation by the Commission." No further relevance and no good cause need be shown. But it is the adjudicative rules, not the investigative ones, which are to govern once a complaint has issued. See Rules 3.1 and 3.2. As to some items, the Hearing Examiner seems to have ignored this distinction.[4]

---

4. It is not necessary to go as far as respondents urge the court to go in this respect. Respondents claim that substantially the entire order is investigative because the particular resources involved were specified for the first time after the complaint issued. But in my opinion it would be too strict an interpretation of Rule 3.11 to limit production to documents which pertain only to those suppliers about whom the Commission had inquired in the pre-complaint investigative stage.

The Hearing Examiner stated in his memorandum:

"Complaint counsel have already identified the resources involved and the basic transactions to be relied upon, and have submitted to the examiner, in compliance with Prehearing Order No. 1, a mass of material which will form a great part of their case. As the hearing examiner understands it, with regard to the transactions already identified, complaint counsel are now seeking documentation from respondents surrounding the transactions and invoices or other book entries showing the disposition by respondents of the merchandise reflected on the tabulations already submitted. This is precisely what § 3.11 of the Rules was designed to achieve at this stage of a proceeding."

Again, it is difficult to understand how he could have so concluded. It is plain that much of the material required of respondents could not conceivably bear upon "the disposition by respondents of the merchandise reflected on the tabulations already submitted." Those tabulations were concerned with sales by only ten suppliers in only two years, 1963 and 1964.

The case, therefore, comes down to this. The Commission is asking the court to enforce an order which in the court's opinion is based, in part at least, upon an erroneous application by the Hearing Examiner of the Commission's own rules as interpreted by the Commission. The Commission is seeking such enforcement in the face of uncontradicted testimony which shows that compliance with parts of this order will be severely burdensome to respondents. And yet the order does not transcend the bounds of the Commission's authority under the Act. However erroneous and however burdensome, it is an order which the Commission had power to make. What is the power and the duty of this court under these circumstances?

An administrative agency is bound by its own rules and regulations. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

It is clear that upon review in the Court of Appeals of a final cease and desist order of the Commission, a violation by the Commission of its own rules which has resulted in prejudice to respondents will require a reversal of the Commission's order.[5] Pacific Molasses Co. v. Federal Trade Commission, 356 F.2d 386 (5th Cir. 1966).

In the present case, however, there is no final cease and desist order. We are here concerned with the scope of review in the district court of an interlocutory order of the Commission. If the shoe were on the other foot, and if respondents were suing to enjoin the Commission from enforcing its interlocutory order, it is highly doubtful whether the court should interfere with the Commission's determination at this stage of the administrative proceeding.

See Judge Bryan's recent opinion in Sperry & Hutchinson Company v. Federal Trade Commission, 256 F.Supp. 136 (S.D.N.Y.1966), and cases cited therein.

But here it is the Commission which is taking the initiative. It asks the court to enforce its interlocutory decision. Under these circumstances, the fact that the order is not final would seem to be immaterial. The court is called upon by the Commission itself to review it.

What is the proper scope of that review? According to petitioner, it is narrow indeed. Petitioner argues in effect that as long as the order is within the Commission's statutory authority, the court has no alternative but to enforce

5. Petitioner does not deny that the Court of Appeals, in passing upon a final cease and desist order, could review the order here in question. Indeed, petitioner asserts that review can be had only in the Court of Appeals, not in the district court.

it. Petitioner relies upon a line of cases dealing with the enforcement of investigative subpoenas issued by administrative agencies.[6] Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Civil Aeronautics Board v. Hermann, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852 (1957); Federal Trade Commission v. Crafts, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957).

But here the Hearing Examiner did not purport to issue an investigative subpoena, he purported to act under a rule of discovery prescribed by the Commission for adjudicative proceedings. This is the Commission's first attempt, as far as counsel or the court have been able to discover, to enforce an order purportedly made under the adjudicative rules. It is not inevitable, as petitioner seems to assume, that the scope of review here is identical with that in the investigative subpoena cases. On the contrary, the scope may well be broader here. Cf. Elmo Division of Drive–X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965).

■ In any event, even in the case of an investigative subpoena, respondents have some rights. They are entitled to a hearing. That hearing should not be a meaningless formality. The Supreme Court has said, with regard to an Internal Revenue summons, that the witness may challenge the summons "on any appropriate ground." Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

■ It is clear, even in the investigative cases, that respondents may object to the subpoena on the ground of relevance and upon the ground of oppressiveness, i. e., the undue burden of compliance. Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44

S.Ct. 336, 68 L.Ed. 696 (1924); See Oklahoma Press Publishing Co. v. Walling, supra, 327 U.S. at 209, 66 S.Ct. 494; Federal Trade Commission v. Tuttle, 244 F.2d 605 (2d Cir. 1957), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957).

Apparently indefiniteness is also an appropriate reason for denying enforcement of an administrative order. See St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

These principles should apply here where the order is based on an administrative rule which expressly requires a showing of relevance and where the Commission in interpreting that rule has said that good cause involves considerations of "basic fairness." Failure of the Commission to insist upon the showing of relevance and basic fairness which its own rule requires would certainly seem to be an "appropriate ground" of challenge to the Commission's action.

■ Where an administrative agency seeks the aid of a court in enforcing its order, the court must not permit its process to be abused. United States v. Powell, supra 379 U.S. at 58, 85 S.Ct. 248.

In my opinion, the Hearing Examiner's order in this case is in some respects unjust. To grant complete and undiscriminating enforcement of that order, as petitioner requests, would, I believe, amount to an abuse of the process of this court. On the other hand, there are portions of the order which require the production of documents that are relevant and which impose no undue hardship upon respondents. As to these, petitioner is entitled to enforcement. It is necessary, therefore, to consider each item on its merits.

■■ I have carefully examined each item and have weighed the arguments of the parties, pro and con, concerning it. In deciding whether or not to direct its production, I have applied the prin-

---

**6.** Petitioner also cites United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), a case which involved Federal Trade Commission compliance reports.

ciples heretofore mentioned. Where the relevance of any item may be thought doubtful, I have given petitioner the benefit of the doubt, unless production would be unduly burdensome. I see no need to expand this opinion by discussing each item in detail. The result is as follows:

*As to Respondents AMC and AWC*

Production will be directed of the following items:

1, 2–a, 3, 9, 10–a, 10–b, 10–c, 10–d, 10–e, 11, 12, 13, 14.

Production will be denied as to the following items:

2–b, 2–c, 2–d, 4, 5, 6, 7, 8, 10–f.

*As to Respondent Federated*

Production will be granted as to items 1 and 4. Production will be denied as to items 2 and 3.

Petitioner's motion is granted to the extent indicated above. In all other respects the motion is denied.

Settle order on notice.