(No. 62477.—▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DON McWHORTER, Appellee.

*Opinion filed October 1, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, for the People.

No appearance for appellee.

JUSTICE RYAN delivered the opinion of the court:

The Attorney General filed a complaint against Don McWhorter, individually and doing business as Wildwood Kennels, in the circuit court of Sangamon County seeking an order compelling McWhorter to obey a subpoena previously issued by the Attorney General pursuant to the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*). The trial court ordered the complaint stricken, finding, *sua sponte*, that the Act was unconstitutional. Notice of appeal was filed to the appellate court, which transferred the cause to this court (87 Ill. 2d Rules 365(b), 612(o)), since it was directly appealable under our Rule 603 (87 Ill. 2d R. 603). We affirm.

Following receipt of a consumer complaint filed against Don McWhorter and Wildwood Kennels, the Attorney General, on April 9, 1984, issued a subpoena to defendant McWhorter. McWhorter was alleged to be the owner, operator and agent of Wildwood Kennels and to have engaged in trade and commerce in Illinois at an address in Makanda in Jackson County in southern Illinois. The subpoena required McWhorter to appear at the office of the Attorney General in Springfield on May 4, 1984, in regard to an investigation being conducted pursuant to the Act and to bring "all written instruments,

contracts, and records dealing with business transactions conducted during 1983 between Wildwood Kennels and Terry and Sue Peters of Springfield, Illinois." The subpoena provided that failure by McWhorter to comply with the subpoena might result in court action against him. The subpoena was personally served on McWhorter at the Makanda address by an investigator for the Attorney General.

McWhorter failed to appear at the office of the Attorney General on May 4, 1984. Thereafter, on May 29, 1984, the Attorney General filed a complaint in the circuit court of Sangamon County against McWhorter, individually and doing business as Wildwood Kennels. The complaint sought an order requiring McWhorter to appear before the Attorney General to answer the subpoena, enjoining McWhorter from engaging in trade or commerce of any kind within Illinois pending compliance with such an order, and requiring McWhorter to pay all costs of prosecution and investigation of the action. On the same date a summons was issued to McWhorter requiring him to file an answer or his appearance in the office of the clerk of the circuit court of Sangamon County within 30 days after service, not including the day of service. The summons provided that if McWhorter failed to do so, a judgment or decree by default might be taken against him for the relief asked in the complaint. That summons was also served on McWhorter by an investigator for the Attorney General on August 23, 1984.

An answer in this cause was filed in the circuit court on September 24, 1984. It is a one-page, unsigned, handwritten document. The answer states that a special order was placed for a puppy of a certain breed. The individuals who made the order were told at the time the order was placed that deposits on special orders would not be refunded, and the invoice they received so stated as well. Thereafter the individuals purchased a puppy of

the same breed elsewhere and then insisted on a refund of their deposit. The answer denied any consumer fraud in regard to the transaction. Neither the answer nor a notice of filing the answer was served on the Attorney General.

In early May of 1985 the Attorney General requested in writing that the trial court set a date to hear a motion by the Attorney General for a default judgment. The matter was set for May 30, 1985. On that date an assistant Attorney General appeared with a prepared order of default and requested entry of a default judgment against McWhorter. McWhorter neither appeared in person nor by counsel. The trial court proceeded to hear the cause on the Attorney General's complaint and summons and on the answer. Its ruling of the same date is indicated by the following docket entry:

> "*** The Court finds *sua sponte* that the statute which required defendant to travel to Springfield, Illinois, from Jackson County, Illinois, is unconstitutional on the basis of nothing more than a complaint from a consumer or customer and without knowing the merits of the matter. The Attorney General has attempted to require the defendants [*sic*] to make a trip which by the time defendant travels to Springfield and returns with [*sic*] require a day of his time and cost him not less than $100. The statute which deprives a defendant of a day of his liberty with no more due process than that would be violative of our constitution. For example, the State is required to conduct a probable cause hearing before a judge before issuing a bench warrant. The statute in the instant case has effectively deprived the defendant of liberty and property without due process. The Court holds that under the facts and circumstances alleged in the complaint, the statute violates the Illinois [and] United States Constitutions and the complaint is stricken."

Subsequently, in June of 1985, the Attorney General filed a motion for rehearing. The motion argued that

since the Attorney General did not have prior notice that the trial court "would *sua sponte* declare the Consumer Fraud Act unconstitutional as it applied to subpoena enforcement powers," he was unprepared to argue that issue. The trial court denied the Attorney General's motion for rehearing on July 30, 1985, and as previously stated, the Attorney General then pursued this appeal.

On appeal the Attorney General contends that the trial court's order implicitly raises two issues: (1) whether the statutory grant of investigatory powers to the Attorney General violates the prohibition on unreasonable searches and seizures, and (2) whether the Attorney General's investigation, initiated pursuant to the statutory grant of investigative powers, constitutes a violation of due process.

As to the first issue, the Attorney General argues that his authority under sections 3 and 4 of the Act to initiate an investigation and to issue a subpoena does not depend on the existence of probable cause. He also maintains that the subpoena issued to McWhorter was not so unreasonable in its demands or so indefinite in its terms as to go beyond the statutory purpose for which the inquiry was authorized and thus did not amount to an unconstitutional "constructive search." As to the second issue, the Attorney General argues that his initiation of an investigation and issuance of a subpoena under sections 3 and 4 of the Act did not deprive McWhorter of liberty or property without due process. In support of this argument he maintains that McWhorter is not entitled to the protections of the due process clause because he has neither a liberty nor a property interest which is constitutionally protectable. In the alternative, the Attorney General maintains that the procedures traditionally associated with due process in judicial and quasi-judicial proceedings, other than the right to adequate notice and an opportunity to be heard, are neither required by nor are

they appropriate in investigative proceedings initiated by him under sections 3 and 4 of the Act.

For the reasons discussed below, however, we need not address either of the issues described by the Attorney General since we find that the Act is unconstitutional as applied to the facts in this case. We note in this regard that the Attorney General's motion for rehearing filed in the circuit court itself characterized that court's ruling as "declar[ing] the Consumer Fraud Act as unconstitutional as it applied to the subpoena enforcement powers," and as "declaring the Consumer Fraud Act unconstitutional as applied to the facts in this case."

We begin with the principle that "an [administrative] investigation that is arbitrary or in excess of statutory authority or undertaken for an improper purpose, such as to harass, violates due process. (*United States v. Powell* (1964), 379 U.S. 48, 58, 13 L. Ed. 2d 112, 119-20, 85 S. Ct. 248, 255[; *Oklahoma Press Publishing Co. v. Walling* (1946), 327 U.S. 186, 216, 90 L. Ed. 614, 634, 66 S. Ct. 494, ___].)" (*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 299 (a case likewise challenging the constitutionality of sections 3 and 4 of the Act).) See *United States v. Associated Merchandising Corp.* (S.D.N.Y. 1966), 261 F. Supp. 553, 560 (subpoena issued in course of an administrative investigation may be objected to "on the ground of relevance and upon the ground of oppressiveness, i.e., the undue burden of compliance"); *In re Prestige Sewing Stores of Queens, Inc.* (Sup. Ct. New York County 1967), 54 Misc. 2d 188, ___, 281 N.Y.S.2d 689, 692 (court has power to grant appropriate relief should Attorney General's subpoena demands become oppressive, coercive, arbitrary or capricious); *People v. Anaconda Wire & Cable Co.* (Sup. Ct. New York County 1965), 45 Misc. 2d 151, ___, 256 N.Y.S.2d 121, 122 (subpoena power given to Attorney General should not be utilized and reutilized to the ex-

tent that it becomes harassing and unreasonable).

It has been held that a subpoena which would require a person to travel an excessive distance in the course of complying with the subpoena may be held to be unreasonable and enforcement may be denied. (*Bank of America National Trust & Savings Association v. Douglas* (D.C. Cir. 1939), 105 F.2d 100, 107-08 (court held that *subpoena duces tecum* was unreasonable and should not be enforced based in part on the long distance it would be necessary to travel to comply with subpoena, thus unduly and unreasonably hampering business concern); 2 Am. Jur. 2d *Administrative Law* sec. 263 (1962) (under some statutes the effective power of a subpoena is limited by the distance it would be necessary to travel to comply with the subpoena).) In a similar regard, it is well established that legal process may not be used to compel a party to do some collateral thing or to accomplish some improper ulterior purpose. (*Bonney v. King* (1903), 201 Ill. 47, 50; *Ewert v. Wieboldt Stores, Inc.* (1976), 38 Ill. App. 3d 42, 44.) Thus, a subpoena used for any purpose other than to compel the attendance of a person as a witness is an abuse of the process of the court. *Dishaw v. Wadleigh* (1897), 15 A.D. 205, 211, 44 N.Y.S. 207, 210 (subpoena used to force payment of a claim with the idea that, the claim being small, rather than submit to the discomfort, inconvenience and expense of attending court located a great distance away, the subpoenaed person would pay the claim).

The Attorney General maintains that "the circuit court did not challenge [his] investigation in this case on grounds that the initiation of same was arbitrary or undertaken for an improper purpose." We disagree. The docket entry of the trial court clearly indicates that the foundation of its holding that the Act was unconstitutional was that the Attorney General, "on the basis of nothing more than a complaint from a consumer or cus-

tomer and without knowing the merits of the matter," was attempting to require McWhorter to travel from Makanda to Springfield and then back to Makanda, which would "require a day of his time and cost him not less than $100."

Section 3 of the Consumer Fraud and Deceptive Business Practices Act provides in pertinent part:

"When [the Attorney General] receives a written complaint from a consumer or borrower of the commission of a practice declared to be unlawful under this Act [section 2 prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce (Ill. Rev. Stat. 1983, ch. 121½, par. 262)] *** he may:

(a) Require that person to file on such terms as he prescribes a statement or report in writing under oath or otherwise, as to all information as he may consider necessary;

(b) Examine under oath any person in connection with the conduct of any trade or commerce;

(c) Examine any merchandise or sample thereof, record, book, document, account or paper as he may consider necessary; and

(d) ***." (Ill. Rev. Stat. 1983, 121½, par. 263.)

Section 4 of the Act provides in part:

"To accomplish the objectives and to carry out the duties prescribed by this Act, the Attorney General, in addition to other powers conferred upon him by this Act, may issue subpoenas to any person, administer an oath, or affirmation to any person [and] conduct hearings in aid of any investigation or inquiry." Ill. Rev. Stat. 1983, ch. 121½, par. 264.

As previously mentioned, upon receipt of the consumer complaint filed against McWhorter and Wildwood Kennels, the Attorney General issued a subpoena requiring McWhorter to appear in the Attorney General's office in Springfield on a specified business day and to bring certain documents with him. The Attorney General chose the above course of action rather than using some

less disruptive method of resolving the underlying dispute without the need for McWhorter to travel to Springfield. In an effort to effectuate the return of an apparently nonrefundable deposit, the subpoena would require McWhorter to travel from Makanda to Springfield and back to Makanda, a total distance of approximately 350 miles (Illinois Rate Basis and Mileage Tariff 1025-A, at 224 (issued June 2, 1977, by Illinois Intrastate Motor Carrier Rate and Tariff Bureau, Inc., eff. Sept. 1, 1977)), with the corresponding loss in time and money to McWhorter. We note that the Act contains no provision for reimbursement for travel expenses associated with complying with a subpoena should the result of the hearing disclose no wrongdoing. Also, no offer to reimburse McWhorter for his travel expenses was included in the Attorney General's subpoena.

Furthermore, when McWhorter failed to make the trip from Makanda to Springfield the Attorney General filed the complaint in question in the circuit court of Sangamon County, which is located in Springfield, seeking to enjoin McWhorter "from engaging in trade or commerce of any kind within the State of Illinois" until such time as McWhorter appeared in the Attorney General's office in Springfield to answer the subpoena; in essence requesting that the court force McWhorter out of business.

We do not know how much money was deposited with McWhorter by the complaining witnesses. It is doubtful, however, that the amount of the deposit was substantial. This is simply a case where the complaining witnesses wanted to recover the deposit. Instead of filing a claim in the small claims court, which would have required complainants to travel to Jackson County, the complaint was made, instead, to the Attorney General in Springfield.

We conclude that the Attorney General's subpoena

384

was arbitrary and oppressive, *i.e.*, unduly burdensome, and thus that the Consumer Fraud and Deceptive Business Practices Act was unconstitutional as applied to McWhorter in this case.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*