**EXXON CORPORATION et al., Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

**Civ. A. No. 75–167.**

United States District Court, D. Delaware.

Jan. 30, 1976.

Thomas Herlihy, Jr., of Herlihy & Herlihy, Wilmington, Del., for Exxon Corp.; William Simon, John S. Kingdon, Robert G. Abrams, and Robert J. Brookhiser of Howrey & Simon, Washington, D. C., of counsel.

James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Texaco, Gulf Oil and Shell Oil; Robert F. McGinnis, William C. Weitzel, Jr., and Philip W. Schaefer, New York City; Milton Handler, Fred A. Freund, and Milton J. Schubin of Kaye, Scholer, Fierman, Hays & Handler, New York City of counsel, for Texaco; Jesse P. Luton, Jr., John E. Bailey, and W. Bernard Fudge, Houston, Tex., of counsel, for Gulf Oil; Edward F. Howrey, J. Wallace Adair, Keith E. Pugh, Jr., and James R. Fox, Washington, D. C., of counsel, for Shell Oil.

W. Laird Stabler, Jr., U. S. Atty., and Kent Walker, Asst. U. S. Atty., Wilmington, Del., for defendants; Robert J. Lewis, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, Gerald Harwood, Asst. Gen. Counsel and John T. Fischbach, F. T. C., Washington, D. C., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an effort by certain major oil producing and marketing corporations to appeal an interlocutory order entered by an Administrative Law Judge and affirmed by the Federal Trade Commission. Although the factual background is not complex, certain facets of the case, including the order issued, are novel. An understanding of the background of the case is therefore necessary to an understanding of the ruling of the Court.

### I. Factual Background

The plaintiffs in this action are four major oil companies[1] which, with certain others,[2] are respondents in a complaint filed before the Federal Trade Commission ("Commission"). That complaint, FTC Docket No. 8934, is the culmination of an investigation conducted by the Commission staff during the past several years on the "anticompetitive structure" of the market in the production, refining and marketing of crude oil and refined oil products. The complaint alleges that as a result of agreements among the respondents, and actions on their part, there is a restraint of trade in a market defined in the complaint. The actions complained of by the Complaint Counsel[3] go back as far as 1948. Coun-

---

1. Exxon Corp., Texaco, Inc., Gulf Oil Corp., and Shell Oil Corp.

2. The other respondents in the FTC complaint are Mobil Oil Corp., Standard Oil Company of California, Standard Oil Co. (Indiana) and Atlantic Richfield Co. *See* FTC Docket No. 8934.

3. "Complaint Counsel" is the attorney who presents the views of the FTC staff and other-

sel for both sides agree that the proceedings on the complaint are likely to consume five to ten more years before a decision on the substantive merits is made by the Commission. *See* Transcript of Oral Argument at 17.

As a part of the proceedings on the Commission complaint, Complaint Counsel sought and secured the order here at issue from the Administrative Law Judge assigned to the case. The order required the oil companies and Complaint Counsel to refrain from the destruction of virtually all documents in existence at the time the order was issued.[4] The Order was issued *ex parte,* after a written motion by the Complaint Counsel, on the grounds that "document retention programs"[5] carried on by the oil companies were likely to destroy what might be potentially relevant evidence.[6]

Following the issuance of the Order, the oil companies objected to its scope and its *ex parte* nature. The Administrative Law Judge held a hearing several days after the issuance of the Order.[7] At the end of the hearing, the Administrative Law Judge announced his decision that the Order would stand as issued, though the oil companies would have leave to seek changes in the Order with regard to specific documents.[8] No further explanation was forthcoming from Complaint Counsel or the Administrative Law Judge as to the nature of the asserted relevance.

The Order was then appealed by the oil companies to the Commission,[9] and

---

wise conducts the "plaintiff's" or "complainants'" case before the Administrative Law Judge or the FTC in adjudicatory hearings. Complaint Counsel secured the order in question, but did not appear in the Court to defend the order. Instead, the order was supported by the General Counsel's office of the Commission. To avoid the appearance of any conflict of interest, or prejudice to the Commission's adjudicatory functions during the pendency of a complaint before the Commission, Complaint Counsel do not represent the Commission. *See generally,* Transcript of Oral Argument, Dec. 5, 1973, at 13, 14 [hereinafter "Tr. of Oral Arg."]

4. This order, hereinafter "the Order", is as follows:

"It is Ordered that all parties to this proceeding . . . shall henceforth preserve and secure from destruction all presently existing documents, writings, recordings, or other records of any kind whatsoever which relate in any way to the exploration, production, transportation, and refining of crude oil and the transportation and marketing of refined petroleum products, including, but not limited to, matters set forth in Complaint Counsel's Prediscovery Statement filed February 22, 1974, and complaint counsel's domestic and international discovery outlines attached as appendices to the Motion of Complaint Counsel For Major Integrated Procedural Relief, dated October 18, 1974. . . ."

This Order was limited to allow the oil companies 10 days in which to respond and "show cause" why the Order should be rescinded; and to allow Complaint Counsel to make a showing requiring the preservation of records being generated, rather than those which were in existence at the time the Order was issued.

5. With the ease of veteran users of Newspeak, see G. Orwell, Nineteen Eighty Four (1949), *passim* and Appendix, all counsel in this action have used the term "document retention programs" to refer to programs whose purpose is the destruction of categories of documents when those documents reach a certain age, or are duplicable, or are otherwise within the policy used by the organization. For the sake of an orderly record, though with misgivings about the use of our mother tongue, the Court will also refer to these programs as "document retention programs". It will insist, however, on quotation marks around the word "retention".

6. *See* "Motion of Complaint Counsel for an Order to Preserve Documents" filed in Docket No. 8934 on November 8, 1974; *and* the Order issued thereon, Docket No. 8934, filed November 12, 1974.

7. *See,* Transcript of Hearing, filed as Exhibit A to Plaintiffs' Motion for Summary Judgment, Docket No. 11A in this Court, at 306–07, 309.

8. *See,* Transcript of Hearing, *supra,* note 7 at 366, 373, 374.

9. The Administrative Law Judge certified the question to the Commission, since the Order was viewed as interlocutory, and would otherwise not have been before the Commission until after the Administrative Law Judge had recommended findings on the merits. The questions certified to the Commission were whether the Administrative Law Judge had the power to issue a preservation order (which was characterized as being in the nature of a preliminary injunction); and whether, if such power existed, the Administrative Law Judge could refuse to apply the order to governmen-

certain of the oil companies also sought relief from the breadth of the Order by moving to have some categories of documents declared to be outside the Order.[10] As a result of these motions, the Administrative Law Judge amended his order to specify that some documents were not within the scope of the Order, and that other documents which were duplicated and duplicable could be destroyed.[11]

On appeal, the Commission affirmed the issuance of the Order. The Commis-

sion declared that although the power had not heretofore been used, it was nonetheless part of the Commission's powers as granted by Congress; and that although it was error for the Order to have issued originally in an ex parte fashion, the error was harmless since it was remedied by a hearing held within a few days from the issuance.[12] The Commission also found that the oil companies were not entitled to an amendment of the Order to include certain other government agencies.[13]

tal agencies other than Complaint Counsel. The Commission took the appeal on January 13, 1975, but in doing so, provided that the Administrative Law Judge would continue to have the power to modify his original Order. *See,* Docket No. 8934, Order of February 5, 1975, at 2, 3.

**10.** Mobil and Atlantic Richfield both filed motions to limit the scope of the Order. Although not all of the respondents were named as parties to the motions, the ruling by the Administrative Law Judge with regard to the relevancy of documents of a category held by one oil company would likely be extended to include those held by other oil companies.

**11.** The order with regard to the motion filed by Mobil was the result of consent by the Complaint Counsel to an interpretation of the original order. Under the "interpretation", interim compilations or working papers could be destroyed provided that the means exist to reconstruct those papers from the final product; and microfilm or other exact copies of the materials may be kept in lieu of the originals. *See,* "Order Interpreting Order For Preservation of Records", Docket No. 8934, Nov. 27, 1974.

The motion of Atlantic Richfield insofar as it sought clarification or limitation of the original order was granted in some respects, and denied in others. As a result of the Administrative Law Judge's ruling on that motion: (1) data processing records are exempted except insofar as they inventory records available or are reviewed by management personnel other than data processing management personnel, or cannot be recreated from other available documents; (2) retail credit billing information is exempted except that a microfilm copy of all tickets and original statements, and a copy of the master file must be retained; (3) stock transfer records are exempted except that one copy of all reports to government agencies, all ledgers, and reports to security holders must be retained; (4) construction planning documents are exempted except that one copy of all final documents must be retained; (5) certain banking transaction items are exempted; (6) certain insurance items are exempted; (7)

manufacturing maintenance records are exempted, except that all records relating to refining and "through-put" (*cf.* note 5 *supra*) of crude oil must be retained; (8) certain employee information is exempted, except that one copy of all policies must be retained, as well as labor relations documents; (9) research reports of various kinds are exempted, except that all final reports to management personnel must be retained; (10) duplicates, except duplicates with extraneous notations are exempted provided a master copy is retained; (11) microfilm copies may be retained in place of originals provided that no copy containing "extraneous notations" may be destroyed; (12) safety and security documentation is exempted; (13) temperature and other data readings on various processes are exempted; (14) outside publications not generated by the Company and publicly available are exempted; (15) routinely discarded material such as steno pads, scratch paper and used carbon paper are exempted; (16) patent data is exempted except for records relating to licensing of patents; (17) telephone records are exempted except for one copy of all telephonic directories; (18) retail credit information files, such as bad debt records, are exempted.

In spite of the foregoing limitations, however, no party may destroy anything which would not have been destroyed under the document "retention" program in effect at the time of the original Order; and all recreation of data destroyed shall be at the expense of the party who destroyed the data. *See,* Docket No. 8934, "Order Modifying Preservation. . . . " Feb. 5, 1975.

A reading of the subsequent modifications of the Order indicates not only its original scope, but also the present scope and the failure anywhere in the existing order as modified to provide for a showing of relevancy to the proceedings.

**12.** *See,* Docket No. 8934, "Order Affirming Denial of Motions to Rescind Order for Preservation of Documents", March 25, 1975, at 2, 3.

**13.** *Id.* at 3.

The oil companies contended before the Administrative Law Judge, the Commission and

Thereafter the oil companies filed a complaint in this Court, alleging that the Order as then constituted was an unlawful act on the part of the Commission and beyond the scope of its powers; that the Order violated the rights of the oil companies under the Fourth, Fifth, and Fourteenth Amendments to the Constitution; that it was a final order as to which no other relief or later review would be adequate; and that they were entitled on those grounds to a finding that the Order was unlawful and to an injunction against its continuation, or, if the Commission is found to have such power, a declaration that the Order be expanded to include other government agencies. The Commission in response filed a motion to dismiss the Complaint on the grounds that the Order was not a final order; that there were other avenues of review which were adequate to prevent harm to the oil companies; and that the complaint otherwise failed to state a claim upon which relief could be granted. The oil companies opposed the Commission's motion to dismiss and filed a motion for summary judgment on their claim. The issues on both matters were briefed, and oral argument was heard by the Court on December 5, 1975.

For the reasons discussed *infra,* this Court is of the opinion that the Order must be vacated and remanded to the Commission for further findings. The Court cannot, without a clearer record than is present here, make a determination on the power of the FTC to issue such an order, whether or not it includes other government agencies.

## II. Jurisdiction

The Commission has challenged the jurisdiction of the Court to hear this case, urging that neither the Administrative Procedure Act [14] nor the Declaratory Judgment Act [15] provides for review of orders such as the present one because the plaintiffs have failed to exhaust their administrative remedies; and the order is not a final one in any event. The oil companies assert that jurisdiction does exist, and that review under the APA and the Declaratory Judgment Act is possible.

▮▮▮ It is clear in this Circuit that the APA is not a ground for the assertion of jurisdiction.[16] However, plaintiffs assert several other grounds of jurisdiction, including 28 U.S.C. §§ 1331(a), 1337, and 1361.[17] In the posture of the

---

here, that if the Commission had the power to issue the Order, it should also require all the agencies of the United States government, rather than only Complaint Counsel, to preserve documents. The oil companies urge that the preservation of such documents as are in the hands of the agencies is required because their defense to the FTC complaint includes, *inter alia,* that any anticompetitive structure of the market which exists was a result of government policies in the post-World War II era. *See, infra,* note 27.

**14.** Act of June 11, 1946, 60 Stat. 243, as amended, 5 U.S.C. §§ 551–706; cited hereinafter as APA and by section number only.

**15.** Act of June 25, 1948, 62 Stat. 964, as amended, 28 U.S.C. §§ 2201, 2202.

**16.** *West Penn Power Co. v. Train,* 522 F.2d 302, 309–10 (3rd Cir. 1975); *Bachowski v. Brennan,* 502 F.2d 79, 82 (3rd Cir. 1974), *aff'd. in part and reversed on other grounds, sub nom. Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

It is also clear that the Declaratory Judgment statute is not a separate grant of juris-

diction to the federal courts, but only provides a form of procedure and remedy, since by its own terms it applies only "(i)n a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201. *See, Schilling v. Rogers,* 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72 (1950); *Ragoni v. United States,* 424 F.2d 261, 264 (3rd Cir. 1970); *Stamicarbon, N. V. v. Chemical Const'n. Corp.,* 355 F.Supp. 228, 232 (D.Del. 1973).

**17.** 28 U.S.C. § 1331 provides jurisdiction for cases "aris[ing] under the Constitution, laws, or treaties of the United States," where the matter in controversy exceeds $10,000 in value. Contained in the complaint are allegations of a violation of rights under the Fourth and Fifth Amendments to the Constitution as well as interpretations of federal statutes, and allegations that the matter exceeds the statutory monetary limit. Since the motion to dismiss brought by the Commission is based solely on the pleadings, the factual allegations of the complaint must be taken as true, though not the conclusions of law.

present motions, the Court is satisfied that jurisdiction to consider the case exists.

### A. § 1337

The Third Circuit has held that § 1337 provides a jurisdictional base under conditions similar to those here. In *Bachowski v. Brennan, supra,* note 16, 502 F.2d at 82–83, *aff'd.,* 421 U.S. 560, 566, 95 S.Ct. 1851, 44 L.Ed.2d 377, the Court held that an action based on provisions of the Labor-Management Reporting and Disclosure Act,[18] was a suit arising under an act regulating commerce. There is no doubt that the Federal Trade Commission Act was passed to "protect trade and commerce against unlawful restraints and monopolies," see 15 U.S.C. §§ 44, 45, and this Court is satisfied that an action brought to challenge the power of the Commission to issue particular orders is within the scope of that section.[19] See *Bachowski v. Brennan,* 502 F.2d at 82–3; *General Motors v. Volpe,* 321 F.Supp. 1112, 1121 (D.Del.1970).

### B. § 1331

Since the Court has held that subject matter jurisdiction exists under 28 U.S.C. § 1337, it is clear that jurisdiction must also exist under § 1331, if the amount in controversy exceeds $10,000.

The tests under both statutes, except for the amount, are the same. See *Peyton v. Railway Express Agency, Inc.,* 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); *Yancoskie v. Delaware River Port Auth.,* 528 F.2d 722, 725 (3rd Cir. 1975); *Bachowski, supra,* 502 F.2d at 82, note 3; and 1 Moore's Fed'l. Prac. ¶ 0.60[8.–3] at 627. The allegation contained in the complaint that the amount in controversy exceeds $10,000 is not controverted, and therefore subject matter jurisdiction under § 1331 exists.

### C. § 1361

In view of the fact that subject matter jurisdiction has been found to exist under 28 U.S.C. §§ 1331 and 1337, the question of availability of relief under § 1361 need not be decided. The Court notes that mandamus relief under § 1361 would be narrower than the relief available under §§ 1331 and 1337 combined with the APA because review of abuse of discretion might not be available. *See, Bachowski, supra,* 502 F.2d at 83, note 4.[20]

### III. Ripeness and Judicial Review

Many of the points the Commission has raised as jurisdictional questions go not to whether there is subject matter jurisdiction in the federal courts, but

---

28 U.S.C. § 1337 grants jurisdiction in those cases "arising under any Act of Congress . . . protecting trade or commerce against restraints and monopolies." It would appear beyond dispute that the organic act of the Commission, the Federal Trade Commission Act, 38 Stat. 717, 15 U.S.C. §§ 41–58, as amended, is such an act. *See generally, Federal Trade Commission v. Bunte Bros. Inc.,* 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881 (1941).

28 U.S.C. § 1361 provides jurisdiction over actions in the nature of a mandamus against federal officials. One form of relief sought by the plaintiffs is a rule requiring the Administrative Law Judge and the Commission to amend the Order to include other federal agencies. *See* note 13, *supra.*

**18.** 73 Stat. 532, 29 U.S.C. § 482(b).

**19.** The fact that the action is itself not brought to affect trade and commerce is of no moment. Section 1337 requires only that the action be one "arising under" such an act, and an action challenging the existence of a power asserted

under such an act "arises under" the act. *See, Adams v. International Brotherhood of Boilermakers, etc.,* 262 F.2d 835 (10th Cir. 1959). "To give rise to Federal Jurisdiction under § 1337, *supra,* the basis of the action must concern the validity, construction or enforcement of a statute regulating commerce." 262 F.2d at 839 (footnote omitted).

**20.** Since the Court holds *infra* that jurisdiction may be exercised in this instance in accordance with the standards set forth in the APA, 5 U.S.C. § 706, there is no need to decide whether the narrower mandamus review might serve. This is particularly so in this case, where it is doubtful that many of the issues raised by the plaintiff could be found to be so free of administrative discretion as to allow the issuance of a mandamus against the Commission and its staff. See, *Bachowski, supra,* 502 F.2d at 83, note 4. *But see, Naporano Metal & Iron Co. v. Secretary of Labor,* 529 F.2d 537, 542 (3rd Cir. 1976).

whether such jurisdiction ought to be exercised in the present instance. Though the motion to dismiss is made on several bases, the question reduces to whether the order here is sufficiently final to be reviewable, or is otherwise within the usual exceptions to the rule that administrative remedies be exhausted prior to the seeking of judicial relief.[21] Plaintiffs urge here that they have exhausted all administrative remedies reasonably available to them, and that in any event, the suit here is within the exceptions to the exhaustion rule.

### A. Exceptions to the Requirements for Exhaustion

The Courts have identified three separate categories of exceptions to the rule requiring the exhaustion of administrative remedies.[22] Those categories are: (1) where there would be no adequate review of the agency action at a later time;[23] (2) where there is a substantial showing by the plaintiff that his constitutional rights have been infringed by agency action;[24] and (3) where there is a substantial showing that the agency has acted outside of its statutory mandate.[25] The oil companies here have attempted to raise all of these grounds to excuse any failure to exhaust administrative remedies.

It should be noted that in each instance, it is not sufficient to raise a merely colorable claim, though in the context of a motion to dismiss, the Court must give some leeway to the claim of the plaintiffs. The issue here is thus whether on the facts presented in the complaint, giving the plaintiff the benefit of proof on all the issues raised, the Court could find a violation of constitutional rights, or an action in defiance of express statutory mandate.[26]

■ On the constitutional question, the Court is satisfied that the claimed violation of due process in issuing the Order *ex parte,* assumed *arguendo* to have been a violation, was harmless, as the Commission stated in its opinion. The effect of the error was vitiated by the hearing held several days after the original issuance of the Order, before it was effective, at which the parties were represented and during which the oil companies were able to raise all the claims made here. See, *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 598, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

■ Plaintiffs also urge that their due process rights were violated by the failure of the Administrative Law Judge to include government agencies other than

21. See *Abbott Laboratories, Inc. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The rule has been traced to *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); and see, *Barnes v. Chatterton,* 515 F.2d 916, 920 (3rd Cir. 1975).

22. See, *Barnes v. Chatterton, supra,* 515 F.2d at 920; *Borden, Inc. v. Federal Trade Comm'n.,* 495 F.2d 785, 787 (7th Cir. 1974); *American General Ins. Co. v. Federal Trade Comm'n.,* 496 F.2d 197, 199 (5th Cir. 1974); *United States v. Feaster,* 410 F.2d 1354, 1364 (5th Cir.), cert. denied, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969).

23. *Barnes, supra,* 515 F.2d at 920–21; *Borden, supra, 495 F.2d at 787. For analytical convenience, this issue is treated* infra *under ripeness, since the question also arises under that rubric.*

In the Fifth and Eighth Circuits, the adequacy of review is not treated as a third factor,

but is considered under ripeness. In those circuits, the third exception is that developed in *McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); that is, where the continuation of agency action would have severe international repercussions. 372 U.S. at 17, 83 S.Ct. 671. *See, American General Ins. Corp. v. Federal Trade Comm'n.,* 496 F.2d 197, 199 (5th Cir. 1974); *Seven-Up Co. v. Federal Trade Comm'n.,* 478 F.2d 755, 757 (8th Cir. 1973). There has been no contention that such an exception is applicable here.

24. *Barnes, supra,* 515 F.2d at 920. *Fay v. Douds,* 172 F.2d 720 (2d Cir. 1949) is the origin of the exception.

25. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

26. *See,* 2a Moore's Federal Practice ¶ 12.08 at notes 6, 7 (2d ed. 1975), and cases cited therein.

the FTC in the Order.[27] Plaintiffs base this claim on an expansive reading of *Wardius v. Oregon*[28] which they assert has created a due process right to "equal discovery". If the Order here were such as to actually deprive the oil companies of discovery, the Court might take a different view. But here, as noted *supra,* note 27, there has been no showing that the documents sought by the oil companies have been destroyed or are unavailable in the public record or through alternative methods of discovery. The holding in *Wardius* was not that every order against a defendant must be matched by a countervailing order to the other side. It was rather that discovery was to be "a two way street" so that a defendant could not be required to divulge his own case while "subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed . . . ."[29] Thus, assuming that *Wardius* applies in civil proceedings before administrative agencies, a question on which this Court expresses no view,[30] there has been no

showing of a violation sufficient to give rise · to constitutional objections. For these reasons, the plaintiffs here are not within this exception.

In support of their contention that the Commission has acted outsidè of its statutory mandate, the oil companies have raised several arguments: that the issuance of a preservation order is not a power granted to the Commission under any of its organic provisions;[31] that the power to grant such an order is not included in the provisions of the APA governing Administrative Law Judges;[32] that the Commission had recognized this lack of power by never issuing such an order until the present time; and that no support can be drawn from provisions governing other agencies, because each agency has only such powers as Congress chooses to grant to it. The Commission agrees that the order is unprecedented, but finds support for the order in the powers granted to it to subpoena documents in 15 U.S.C. § 49, which power is said to be potentially ineffective unless the Commission may also order docu-

---

**27.** This claim was made with particular vigor insofar as it is asserted to be an abuse of discretion on the part of the Administrative Law Judge. The oil companies insist that governmental agencies be required to preserve documents which the plaintiffs assert are necessary for their defense. *See, supra,* note 13. Assuming arguendo that such a claim may be made with some force as to the exercise of the agency's discretion, such strength adds nothing to the constitutional claim.

Moreover, this Court is not impressed with the strength of the claim as to discretion. If there has been action by governmental agencies which has led to an "anticompetitive structure" in this market, it seems odd indeed to this Court that such decisions and actions have not been preserved in the formal decisions of the agencies, either in rule making or adjudicative forms. This Court takes judicial notice of the availability of the Federal Register and the Code of Federal Regulations, both in present and past versions; as well as the existence of official and unofficial looseleaf reporting services. The actions of Congress, of course, are preserved in the Statutes-at-Large, the Congressional Record, and various Committee reports and hearing records. The motivations of these agencies in taking such action would not appear relevant, since it is the occurrence of the action and its effects which

would give rise to the alleged defense. Therefore, absent some showing by the oil companies that relevant government documents are not available in the public domain or through the Freedom of Information Act, 5 U.S.C. § 552, this Court could not find an abuse of discretion by the agency solely on these grounds.

**28.** 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). In *Wardius,* the Court held reciprocal discovery was necessary for "fundamental fairness" where a state required a criminal defendant to notify the prosecution of his reliance on an alibi defense and of the identity of the witnesses who would make out the defense, but refused to turn over the names of its own rebuttal witnesses. 412 U.S. at 475–76, 93 S.Ct. 2208.

**29.** *Wardius, supra,* 412 U.S. 475–76, 93 S.Ct. 2213.

**30.** *Cf., Genuine Parts Co. v. Federal Trade Comm'n.,* 445 F.2d 1382, 1387 (5th Cir. 1971), holding that the requirements of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) could not be grafted on to administrative proceedings.

**31.** See, 15 U.S.C. §§ 45, 46, 49.

**32.** See, 5 U.S.C. §§ 554, 556, 557.

ments preserved prior to subpoenaing them.

■ It is not easy to determine whether the Commission has acted outside its statutory powers. It has been held that the error necessary to bring about interlocutory review must be egregious and plain, virtually a blatant disregard of express statutory provisions to the contrary.[33] Nonetheless, the cases have noted the peculiar difficulty of resolving the question of whether the agency has exceeded its statutory powers without considering the merits of the claim raised by the plaintiff.[34] Where it is clear that the agency has not exceeded its power, the court will rule that no jurisdiction exists; and where it is clear on the law alone that the agency has exceeded its power, the court will entertain the action. Where it is not clear, i. e., where the consideration must necessarily involve a close determination requiring an examination of the record below, the court must determine whether an adequate review is available at a time following a final agency order. If such a review is not possible, the court will entertain the action.[35]

Since this question is tied to the question of whether an adequate review of this Order is available in later proceedings, or if the Order is for purposes of

review, final and without later review, it is considered below with the question of ripeness. It is sufficient to state here that there is enough of a question raised to create jurisdiction if there were no other adequate review process available.

## B. Ripeness

To determine if the Order is ripe for review at the present juncture, the Court must determine whether the Order gives rise to a genuine controversy; whether there is sufficient finality to the Order to make its terms and application definite; and whether a review stage exists at a later time which would be adequate to protect the interests raised.[36]

The oil companies assert that the Order is final, having been appealed to the Commission and affirmed by it; that it is as definite as the Administrative Judge and the Commission chose to make it, and if it is indefinite, that is one of its weaknesses; and that no further review proceedings are available to adequately protect their interests. The Commission has responded that the Order is not actually "final" because by its terms it is subject to motions by the oil companies to have some documents excluded from its scope;[37] that, if the Order is thought indefinite, the oil companies have an adequate remedy through

---

33. *American Gen. Ins. Co. v. Federal Trade Comm'n.*, supra, 496 F.2d at 200; *United States v. Feaster*, 410 F.2d 1354, 1366–68 (5th Cir. 1969), cert. denied, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969); *Coca-Cola Co. v. Federal Trade Comm'n.*, 475 F.2d 299, 303 (5th Cir. 1973).

34. *See, Jewel Companies, Inc. v. Federal Trade Comm'n.*, 432 F.2d 1155, 1158–59 (7th Cir. 1970); *American Gen. Ins. Co.*, supra, 496 F.2d at 200.

35. *Id.*

36. See, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Assoc. v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *General Motors Corp. v. Volpe*, 321 F.Supp. 1112, 1125 (D.Del.1970), aff'd., 457 F.2d 922 (3rd Cir. 1972).

"[I]t is fair to say that its [the ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication,

from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories*, supra, 387 U.S. at 148–49, 87 S.Ct. at 1515.

The "hardship of the parties" aspect of the text has already been interpreted by this Court. "This inquiry focuses more precisely on the question of the 'adequacy' of the . . . action now pending . . . ." *General Motors v. Volpe*, supra, 321 F.Supp. at 1125.

37. The Commission points to the amending and interpreting orders already issued as evidence of this lack of finality. *See,* notes 10 and 11, *supra.*

motions seeking clarification; and that an adequate review of the Order is available either when the Commission actually moves to subpoena some of the documents preserved; or upon a final order of the Commission on the merits of the case.

 This Court is satisfied that the Order is final for purposes of ripeness and judicial review. The leading cases point out that "finality" is to be interpreted pragmatically [38] and list several different indicia of "finality". These indicia include whether further agency action is planned; [39] whether further agency action is necessary before the order will have any direct effect on the party seeking review; [40] whether the question presented is merely one of law; [41] and whether there is a statutory bar to access to the court.[42] Under the circumstances here, the oil companies have met these tests. The fact that further amendments to the Order might be sought is not sufficient to raise the pendency of further administrative hearings as that phrase is used in *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. 1507. Any further proceedings at the agency would not return to the question of the agency's power to order preservation of documents, but only to the question of which documents must be preserved, and even on those issues the burden of proof will shift. Nor is any further action necessary for the Order to have an effect on the operations of the plaintiffs here. The Order is presently in effect, at a substantial cost to the plaintiffs in terms of storage as well as the disruption of their established practice.[43] The question here is not one of law only, though the plaintiffs contend that the ultimate determination will rest on whether the FTC has the power to issue such an order at all. This Court conceives the issue to be broader, since the Court may be faced with a question of whether in exercising this power, the Administrative Law Judge and the Commission exceeded the reasonable use of the power, or otherwise acted arbitrarily and capriciously. However, the fact that the case is therefore a complicated one involving both facts and law is not conclusive of the availability of review under *Abbott Laboratories, supra.* The Court will not find the issue unripe merely on that basis, if the case is otherwise fit for judicial determination.[44].

Finally, there has been no citation by the Commission to any statute which, by its terms, would forbid the review of the Order at this stage. In fact, an examination of the legislative scheme presented by the Federal Trade Commission Act shows that Congress normally balanced every FTC discovery, subpoena or other mandatory power with an appropriate opportunity for judicial review in en-

---

**38.** *See, Abbott Laboratories, supra,* 387 U.S. at 149–51, 87 S.Ct. 1507.

**39.** *Id.* at 149, 87 S.Ct. 1507.

**40.** *Id.* at 152–53, 87 S.Ct. 1507, *Toilet Goods Assoc. v. Gardner,* 387 U.S. at 163, 164–65, 87 S.Ct. 1520.

**41.** *Abbott Laboratories, supra,* at 149–51, 87 S.Ct. 1507.

**42.** *Id.* at 153, 87 S.Ct. 1507.

**43.** Not only must the plaintiffs here pay the ongoing cost of storage of old records, they must acquire or use more storage space than would otherwise be required for the storage of newly created records since they are not allowed to consolidate older records without the assurance that every copy being destroyed is in fact exactly the same as the retained master. This assurance would require that each individual employee determine that a docu-

ment he wishes to destroy is not within the Order, a costly task in terms of both time and money.

Of course, as the Commission points out, the costs of litigation are not an "irreparable injury". *See, Myers v. Bethlehem Shipbuilding Co., supra,* 303 U.S. 41, 51–52, 58 S.Ct. 459 (1938); *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Borden, Inc. v. Federal Trade Comm'n.,* 495 F.2d 785, 789 (7th Cir. 1974). But the question is whether there is a sufficient effect to create standing and ripeness (i. e., a concreteness to the issue and the party asserting the interest), not whether the injury gives rise to equitable relief. *See, Abbott Laboratories, supra,* 387 U.S. at 153–54, 87 S.Ct. 1507.

**44.** *See, General Motors Corp. v. Volpe, supra,* 321 F.Supp. at 1125.

forcement proceedings.[45] Therefore, this Court holds that the order of the Commission is final as that term is used in determining the availability of judicial review.[46]

It does not appear to this Court that later review proceedings would be adequate to protect the interests of the oil companies. Although as noted *supra*, the Commission has claimed that there are later proceedings at which challenges to the Order could be made, this Court is not satisfied that these later proceedings would provide sufficient guarantees that the issues would be settled, in light of the dilemma presently facing the companies. This is particularly so where the determination of the present motion would not impede the enforcement of the law or adversely affect the public interest.[47]

■ The Commission has urged that the question of the propriety of the preservation of documents can be raised at the time the Commission moves to subpoena the document. It is not clear that a proper objection to a subpoena for a document in existence is that the document ought not to be in existence and would not be in existence if it had not been for a prior order.[48] Even assuming that such an objection could be raised, it could only be raised as to those documents which were subpoenaed. Those documents ordered to be preserved but not subpoenaed would be irrelevant in any discovery enforcement proceedings.

■ A similar defect applies to any review following a final order by the Commission on the merits. If the oil companies are absolved ten years hence from any wrongdoing, the issue of preservation of documents would appear to be moot: the party capable of raising the issue would have no standing to assert an injury on appeal. If, on the other hand, the companies are found guilty by the Commission, the review in the Court of Appeals will necessarily focus on the support in the record for the Commissions' findings. Subpoenaed documents would either have been dealt with in collateral enforcement proceedings, or any objection would be deemed waived by the voluntary turnover of the documents. Moreover, review would still be limited to those documents actually sought by the Commission. Documents preserved but never turned over to the Commission would not be part of the record on review, and the issue of their proper preservation would seem moot.

■ A third defect arises in the remaining method suggested to challenge the Order in later proceedings. In the event the oil companies failed to obey the Order, and the documents were later subpoenaed, the Commission suggests that the destruction could be used to test the validity of the Order upon contempt proceedings. It is sufficient to note that proceedings which might lead to criminal penalties on the part of individual defendants for the destruction of relevant

---

**45.** *See,* 15 U.S.C. §§ 45(d), (h), (i), 49, 53 and 56; *Federal Trade Comm'n. v. British Oxygen Co.,* 529 F.2d 196 (3rd Cir. 1976) (en banc).

**46.** "Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance, neither of which appears here." *Abbott Laboratories* at 387 U.S. 153, 87 S.Ct. 1507.

And *see, Gardner v. Toilet Goods Assoc.,* 387 U.S. at 171–74, 87 S.Ct. 1520 (1967).

**47.** *See, General Motors Corp. v. Volpe,* 321 F.Supp. at 1128, setting out two standards for the determining of the hardships faced by the plaintiff. First, both compliance and noncompliance must carry serious costs. Second, the judicial review must not impede the administration of the agency or otherwise adversely affect the public interest.

**48.** This is not a search and seizure situation where there would be no knowledge of the existence of the evidence if it had not already been seized or were otherwise the "fruit of a poisonous tree." Since the subpoenas would be subject to judicial scrutiny under 15 U.S.C. § 49, there is no analogy here to a warrantless search among the documents.

evidence, or to adverse determinations on questions of fact because of the unavailability of the documents, do not constitute adequate review.[49] It does not benefit the Commission here to urge that parties may seek review by disobeying outstanding orders.

■ Thus, where it is not clear that the question now presented could be preserved for later review; where the later review may follow a different standard;[50] and where the only alternative method of preserving and raising the issue carries a not insignificant risk of penalties other than mere fines to the corporations,[51] subsequent review is not adequate; and absent damage to the public interest, the issue would be ripe.

In the instant case, the public interest and the administration of the agency's business will not be adversely affected by a consideration of the issue at this juncture. The agency has had ample opportunity to express its view on the need for the preservation order, in light of the agency's expertise. Moreover, all the parties have agreed that the matter before the Commission will not be quickly resolved: whatever delay might be added by this case is insignificant. This is especially so where Complaint Counsel is free to continue his probe and move the proceedings forward, since he does not represent the Commission before the Court.[52]

■ In summary, the Court holds that the present issue is ripe;[53] that there is no adequate review available at a later time; and that this is not a final order, the lack of review at a later time is sufficient to make interlocutory review available. Therefore, jurisdiction to entertain the present case exists, and the motion of the Defendant Commission to dismiss is denied.

### IV. Motion to Dismiss for Failure to State a Claim

The Commission has contended that plaintiffs' suit must be dismissed as failing to state a claim upon which relief can be granted.[54] Many of the contentions raised in this regard have been dealt with *supra,* and the analysis will not be repeated here, e. g., whether the Order is final; and whether adequate alternative remedies at law exist. Pressed particularly by the Commission, however, is whether the plaintiffs have been "irreparably injured" by the Order, in view of a long series of cases holding that expenses incident to litigation are not such an injury.[55]

---

**49.** *See, Abbott Laboratories, supra,* 387 U.S. at 153, 87 S.Ct. 1507; *Gardner v. Toilet Goods Assoc., supra,* 387 U.S. at 173, 87 S.Ct. 1520; *General Motors Corp. v. Volpe,* 321 F.Supp. at 1128.

15 U.S.C. § 50 provides criminal penalties for the failure to produce such documents in response to a subpoena. The Commission's counsel stated that the Commission would not seek criminal enforcement, but such a decision would seem more properly that of the Attorney General. And *see,* 18 U.S.C. § 1505.

Nor would such potential penalties be limited to employees of the oil companies. As raised by the Commission's counsel at oral argument, advice to a client by a member of the bar of the FTC, to destroy documents in violation of an order might be of "great interest" to the Commission. *See,* Transcript of Oral Argument at 77.

**50.** *Borden, Inc. v. Federal Trade Comm'n.,* 495 F.2d at 788; *Jewel Companies v. Federal Trade Comm'n.,* 432 F.2d at 1155, 1159 (7th Cir. 1970).

**51.** *General Motors Corp. v. Volpe,* 321 F.Supp. at 1128–29. In view of the existence of criminal penalties, this Court does not reach the question determined in *General Motors,* viz., whether the civil penalty which could be imposed is not significant in view of the financial position of the parties.

**52.** *See,* note 3, *supra.*

**53.** There has been no contention that a genuine controversy does not exist between the parties, and this aspect of the ripeness doctrine is therefore not before the Court.

**54.** *See,* Fed.R.Civ.Proc., Rule 12(b)(6).

**55.** *See, Sampson v. Murray,* 415 U.S. 61, 88–92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Barnes v. Chatterton,* 3 Cir., 515 F.2d 916, 921. *Cf.,* note 43, *supra.*

■ The issue of irreparable injury arises only where the relief sought is injunctive. The plaintiffs here have sought not only injunctive relief, however, but declaratory relief as well. In view of the holding *infra* that further proceedings must be had in the Commission, the Court deems it unnecessary to decide this issue. The case would continue forward on declaratory relief in any event,[56] which the Court deems adequate for present purposes.[57]

## V. Review of the Order

Review of the Order requires determination of three separate issues: the standard of review; The power of the FTC to issue such an order; and assuming *arguendo* the authority, the procedural and factual requirements for the issuance of such an order. These issues will be dealt with *seriatim*.

### A. Standard of Review

The standards a Court uses in reviewing agency action are not open to question. The Administrative Procedure Act, 5 U.S.C. § 706,[58] as interpreted by the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), sets out six separate standards governing the Court's review.[59] The first four of these standards, which govern review of agency action found arbitrary or capricious, or in excess of procedural, constitutional or statutory requirements,[60] apply in all instances and so must be followed here.[61]

Unlike the situation in *A. O. Smith,* however, in the present case the fifth standard also applies, although the sixth does not.[62] That is, the present case is a review of a proceeding required to be held on the record,[63] and as to which a record exists. Since this is both a re-

---

**56.** The complaint includes sufficient allegations of a need to determine the rights and legal relations of the parties; and as stated above, there is an actual controversy, within the jurisdiction of the Court. The terms of the Declaratory Judgment Act, 28 U.S.C. § 2201 have therefore been met.

**57.** In the instant case, declaratory relief would appear to be sufficient in that it could be pleaded as res judicata in any action brought to enforce the Order, by contempt proceedings or otherwise. This Court will not assume that the Commission or the oil companies would ignore or disregard clear findings on the issues presented, even if they were not enjoined from pursuing further litigation.

**58.** "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to Sections 556 and 557 of this Title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. . . ." Act of Sept. 6, 1966, 80 Stat. 393, 5 U.S.C. § 706.

**59.** See, note 58, *supra.*

A review of the Supreme Court's opinion as it applies to the APA is found in *A. O. Smith v. Federal Trade Comm'n.,* 403 F.Supp. 1000, (D.Del., 1975).

**60.** 5 U.S.C. § 706(2)(A)–(D).

**61.** *Overton Park, supra,* 401 U.S. at 414, 91 S.Ct. 814; *A. O. Smith, supra,* note 59 at 6. There has been no contention here that review is precluded by a statute or that the determination of the legal issues is solely within the agency's discretion. See 5 U.S.C. § 701. It is also apparent that the oil companies have made sufficient allegations that they are adversely affected or aggrieved by agency action. 5 U.S.C. § 702.

**62.** *A. O. Smith, supra,* note 59 at 1005–1006.

view of an adjudicatory hearing or part thereof, and a record is required, both aspects of the tests under which § 706(2)(E) is made applicable are present.[64]

Section 706(2)(F) applies, however, only in those reviews where the agency fact finding procedures are inadequate, or where new issues are raised.[65] In the instant case, it is clear that the Commission procedures are adequate to find necessary facts: there are provisions for discovery, including depositions; there are appropriate opportunities for both sides to argue, etc. While the results or the use of the available procedures may not be everything that the Court would wish in a given instance, it is not the procedures themselves which are inadequate.[66] Nor have new issues been raised here: the oil companies have raised the same issues before the Court as were raised before the Administrative Law Judge and the Commission, namely, that the Commission lacks the power in the first instance; that the result is a violation of certain constitutional guarantees; and that the order is fundamentally unfair.

The standard of review to be used by the Court is therefore whether the agency action was arbitrary and capricious, or not in accordance with the law; was contrary to constitutional guarantees; was in excess of its power; was without due process; or was unsupported by substantial evidence.[67]

### B. FTC Power

The primary assertion of the oil companies is that the Commission and the Administrative Law Judge lacked the power to issue the order. In support of this assertion, the oil companies point out that nowhere in 15 U.S.C. §§ 45, 46 and 49, is the power to issue orders to preserve documents provided; and that no such additional power is specifically granted to an Administrative Law Judge by 5 U.S.C. § 556(c). Citing early cases including *Federal Trade Comm'n. v. American Tobacco Co.*, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924); as well as *Civil Aero. Board v. Delta Airlines, Inc.*, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); and *Soriano v. United States*, 494 F.2d 681 (9th Cir. 1974), the oil companies urge that administrative agencies have only such powers as are specifically granted to them, and as creatures of Congress they may not look beyond their organic acts, and other statutes made applicable to their operations.

The Commission agrees that there is no specific authorization regarding preservation orders, but points out that its power to subpoena documents would be useless if such documents could not be preserved; and that both the Commission and the Administrative Law Judge

---

63. *See,* 15 U.S.C. § 45(b); 5 U.S.C. § 556.

64. *See Camp v. Pitts,* 411 U.S. 138, 141, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *United States v. Allegheny-Ludlum Steel Corp.,* 406 U.S. 742, 756–57, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972); *Overton Park, supra,* 401 U.S. at 414, 91 S.Ct. 814; *Dry Color Mfrs. Ass'n., Inc., v. Department of Labor,* 486 F.2d 98, 104 note 8 (3rd Cir. 1973).

65. "First, such *de novo* review is authorized when the action is adjudicatory in nature and the agency fact finding procedures are inadequate. And, there may be independent judicial fact finding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action. H.R. Rep. No. 1980, 79th Cong. 2d Sess. Neither situation exists here." *Overton Park, supra,* 401 U.S. at 415, 91 S.Ct. at 823.

And *see Camp v. Pitts, supra,* 411 U.S. at 141–42, 93 S.Ct. 1241; *A. O. Smith, supra,* note 58 at 1005.

66. *See* 16 C.F.R. § 3.1 *et seq.* setting out the Commission regulations on adjudicatory proceedings.

67. *See United States v. Associated Merchandising Corp.,* 261 F.Supp. 553 (S.D.N.Y.1966). "This is the Commission's first attempt . . to enforce an order purportedly made under the adjudicative rules. It is not inevitable, as petitioner seems to assume, that the scope of review here is identical with that in the investigative subpoena cases. On the contrary, the scope may well be broader here." 261 F.Supp. at 560.

are empowered to make "procedural rulings" necessary to the proper functioning of the hearings. The Commission also asserts that the leading Supreme Court cases on the powers of the FTC, *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); and *FTC v. Dean Foods,* 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966) have made it clear that the FTC is entitled to some leeway in the interpretation of the acts.

Undoubtedly, the Supreme Court has expanded its view of what powers the FTC has from its earlier opinions. *American Tobacco, supra,* 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 was specifically limited by the Court in *United States v. Morton Salt,*[68] where the Court held that both § 5 and § 6 of the FTC Act[69] must be read together in determining the powers of the FTC. Moreover, *Dean Foods* is a clear holding that the FTC possesses "ancillary powers" to the degree that they are necessary for the preservation of granted powers.[70]

▮▮▮▮▮ Nonetheless, in making a determination of the existence and scope of such a power, the Court must be guided by the limitations Congress has placed on the exercise of specifically granted FTC powers. Subpoena and discovery generally are limited by the requirements of court enforcement, and to evidence shown to be relevant.[71] Where, as here, the order issued is under a newly claimed power and is not based on a specific grant or authorization, the Court must be satisfied that the use of such power is not inconsistent with other provisions of the Act.[72]

In light of the findings below, this Court need not now determine whether the Commission possesses an appropriately defined and limited power to order the preservation of documents.[73] It is sufficient to say that the question is a difficult one calling for the examination of constitutional rights as well as statutory powers. Since the findings upon which such an order must be based and the evidence to support those findings have not been spread on the record which the Court has before it, the proper exercise of judicial power is to await a clearer defining of the issue.[74]

### C. Premises of Preservation Order

Assuming *arguendo* that the Commission has the power to issue a preserva-

---

**68.** *See* 338 U.S. at 652–53, 70 S.Ct. 357. The Court preserved *American Tobacco,* but limited it to those situations where the subpoena was regarded as sweeping too broadly, or where the material sought was not reasonably relevant to the matters within the scope of the agency's power. *Id.*

**69.** 15 U.S.C. §§ 45, 46. The § 6 investigatory powers are broad indeed. See, *National Petr'm. Ref'rs. v. Federal Trade Comm'n.,* 157 U.S.App.D.C. 83, 482 F.2d 672, 678, 679 (D.C. Cir.1973); *Genuine Parts Co. v. Federal Trade Comm'n.,* 445 F.2d 1382, 1391 (5th Cir. 1971).

**70.** *See* 384 U.S. at 607, 86 S.Ct. 1738.

**71.** See *Morton Salt, supra,* 338 U.S. at 653, 70 S.Ct. 357; *Federal Trade Comm'n. v. American Tobacco Co., supra,* 264 U.S. 298, 44 S.Ct. 336; *United States v. Associated Merchandising Co., supra,* 261 F.Supp. at 558; *see also Federal Trade Comm'n. v. Dilger,* 276 F.2d 739 (7th Cir. 1960).

**72.** *See, Heater v. Federal Trade Comm'n.,* 503 F.2d 321, 323–24 (9th Cir. 1974).

**73.** *Cf., Fairbanks v. Hardin,* 429 F.2d 264, 268 (9th Cir. 1970). Even Federal Courts, though granted great powers to control their own proceedings and possessing equity powers that stretch broadly, have used preservation orders only reluctantly and under limits of both time and relevancy, see *United States v. Firestone Tire and Rubber Co.,* Civ.A. No. C. 73–836 (N.D.Ohio, Nov. 28, 1973) (order preserving "potentially relevant" documents for 90 days while exempting all routine business forms); or only by stipulation, *United States v. International Bus. Mach. Corp.,* 58 F.R.D. 556 (S.D. N.Y.1973); *United States v. General Tire and Rubber Co.,* Civ. No. 67–155 (N.D.Ohio, Oct. 6, 1967).

It should be noted that this Court expresses no view on the power of federal courts to issue such orders. *But see Humble Oil & Ref'g. Co. v. Harang,* 262 F.Supp. 39 (E.D.La. 1966).

**74.** The Court thus deems the issue of the power of the Commission to promulgate the order to be unripe at this time, though the remaining issues are ripe.

tion order, under appropriate limitations, this Court is constrained to hold that the present record does not allow it to properly review the discretion of the Administrative Law Judge and the Commission, as that discretion was exercised in the present instance. The handicaps under which the Court would labor are several, only a few of which need to be set out in detail.

In the first instance, a preservation order, as any other order, must rest initially on the facts presented to the adjudicative official. That official in turn must examine the facts presented, under the guidance of the proper burden of proof, and make such findings on the record as will make clear what is being ordered in light of what the facts support. Here, the motion presented to the Administrative Law Judge did not even assert that the documents were relevant, nor go on to describe their relevance or potential relevance.[75] Nor did the support for the motion, at least insofar as that support is available to this Court, show that the documents alleged to be to some degree potentially relevant were in fact endangered by the document "retention" programs.[76] The attempt by the Complaint Counsel and the Administrative Law Judge to shift the burden of proof to the oil companies to show that the documents in question were not relevant is proscribed by the Administrative Procedure Act[77] and the Commission's own regulations.[78] The Commission cannot therefore be allowed to argue that the failure to make these findings is harmless. See 5 U.S.C. § 557(c).

This Court is unable to review with the requisite deference to agency expertise and discretion the Order issued here. Therefore, this Order must be vacated and remanded to the Commission for further findings. Such a proceeding will allow Complaint Counsel to put on the record the necessary facts, and allow the officials to make the appropriate findings as to which document categories are relevant, even under the looser administrative evidentiary standards;[79] why these document categories are endangered; and how long a period of time it is reasonable to preserve the documents in order to allow the agency to subpoena them. Moreover, the Administrative Law Judge and the Commission could then make clear, after an opportunity for the parties to address the question, the exact basis upon which the Commission might rest such a power. In

75. Complaint Counsel's request as made in the Motion of Nov. 8, 1974 was as follows: "During the course of the initial non-substantive depositions taken in this proceeding, it was determined that all eight respondents engage in the systematic destruction of business documents, *many of which may be relevant* to this proceeding . . . While Complaint Counsel imply no position on the propriety of such destruction programs when utilized in the normal course of business, their continuance after an anti-trust action has commenced may well constitute a violation of the law. At the very least, broad destruction programs inevitably preclude a complete discovery of the facts." *Motion, supra,* at 1, 2 (footnote omitted) (emphasis added). Complaint Counsel went on to assert that the function of the Order was to allow the agency to make the final determination of what was relevant. *Id.*

76. The *Motion, supra,* stated that the companies engaged in "systematic document destruction programs," and cited to depositions, evidently of corporate officers. This Court has not been given those deposition pages, and on

those grounds alone finds decision on the exercise of the discretion to be impossible. The Court moreover has been informed by counsel that the depositions cited by Complaint Counsel say only that such programs exist, and do not discuss their scope in relation to particular documents or categories of documents. *See* Tr. of Oral Arg. at 65. It is clear that neither the Administrative Law Judge nor the Commission made findings that certain categories of documents, potentially relevant to specifications of the complaint, were in fact endangered by a program of unknown scope.

77. *See,* 5 U.S.C. § 556(d). This shift is seen in the remarks of the Administrative Law Judge in the Transcript of the Hearing *supra,* n. 7 at 324.

78. 16 C.F.R. § 3.43.

79. Agencies are not restricted to the rigid requirements of rules of evidence, and those rules are not controlling as to admissibility. See *Federal Trade Comm'n v. Cement Institute,* 333 U.S. 683, 705–06, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

addition, of course, if the oil companies wish to pursue their request that other governmental agencies be required to preserve documents, they could raise and attempt to support such a request before the appropriate officials.

This Court finds:

(1) That the motions of the Defendant, Federal Trade Commission to dismiss the pending action must be denied.

(2) That the motion for summary judgment in favor of the Plaintiffs must be denied.

(3) That the Order issued by the Federal Trade Commission is vacated, and these proceedings remanded to the Commission.